**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

PANKAJ MERCHIA,                              )
                                             )
              Plaintiff,                      )
                                             )
       v.                                    )              Civil Action No. 24-3214 (RC)
                                             )
TTR SOTHEBY'S                                )
INTERNATIONAL REALTY *et al.*,               )
                                             )
              Defendants.                     )

**<u>MEMORANDUM OPINION</u>**

**I.   INTRODUCTION**

Plaintiff, appearing *pro se*, alleges that Defendants breached a conditional offer to lease

him a condominium in the District of Columbia.   He sues condo owner Laura Villa and the

realty company that listed the property for rent.   Pending before the Court is Defendants TTR

Sotheby's International Realty, Marco Stilli, Jake Gaddis, and Fred Kendrick's (hereafter

"Sotheby's") Motion to Dismiss the Complaint for failure to state a claim upon which relief can

be granted.   For the following reasons, the motion, ECF No. 10, is granted.

**II.   BACKGROUND**

**A. Factual Allegations**

Plaintiff alleges the following facts based on his "interactions" only with "Defendant-

Realtor."   Compl, ECF No. 1 ¶ 40.   On September 8, 2024, Villa "engaged" Sotheby's to list

her condo for rent.   *Id*. ¶ 44.   That same day, Plaintiff responded to a listing on Zillow by

contacting "Defendant Realtor" Stilli about leasing the property and his "need to move in soon

since he had a school going child and work in D.C."   *Id*. ¶¶ 46-47.   Stilli informed Plaintiff that

"he would check with [Villa] regarding acceptability of terms."   *Id*. ¶ 48.   The next day, on

September 9, 2024, Stilli "provided Plaintiff a conditional offer to lease . . . the Property that

Plaintiff "could accept by making a payment to Defendant-Realtor and submitting paperwork to

fulfill the stated conditions of the Conditional Offer to Lease i.e. 'credit and criminal background

checks.' "  *Id*. ¶¶ 49, 52 (citing Compl. Exs. 131, 141).   Under the terms of the "Conditional

Offer[,] . . . the lease would have a start date of October 1, 2024," at the earliest, "a monthly rent

of $3,200 that may be increased after the 3rd complete year based upon increase in recurring

condo fees, and a duration of 5 years."  *Id*. ¶ 50.   The offer was contingent upon Plaintiff

passing a credit and background check.  *Id*. ¶ 51.

Between September 9, 2024, and September 26, 2024, Plaintiff "made multiple requests

for a lease," which Sotheby's "refused to provide[.]"  *Id*. ¶¶ 57, 58.   On September 19th and

September 25th, respectively, Sotheby's "wrote Plaintiff had a 'Great credit score'" and

"Plaintiff's criminal background check was 'OK, GREAT'."  *Id*. ¶¶ 54, 55.   Plaintiff took those

comments as "a binding agreement" between "Defendant-Owner and Plaintiff."  *Id*. ¶ 56.

Plaintiff alleges that Defendants "objected to" his "source of income being money he

receives under a contractual agreement with a company" but "ran a Dunn & Bradstreet (D&B)

check on the company which proved that the company was legitimate in that it had existed for

more than 15 years and had an excellent Dunn's score[.]"  *Id*. ¶¶ 81-82.   The exhibits to the

complaint clarify that on September 12, 2024, Stilli informed Plaintiff by email that "[a]t this

point the application is not accepted or denied" because Sotheby's and Villa needed "official"

proof of income in order to verify his income.[1]  Compl. Ex. 201, ECF No. 1-2 at 15.   Plaintiff

---

[1]  When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider documents attached to or incorporated by reference in the complaint without converting the motion into one for summary judgment pursuant to Rule 12(d).  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015).

replied the next day asserting, among other things, the illegality of discriminating "based upon my source of income[.]"  *Id*. at 14.

In an email dated September 19, 2024, Stilli listed six reasons why "the owner decided" not to accept Plaintiff's application, which despite a "[g]reat credit score" included "no tax return," "no 1099 or W9," a discrepancy between the preparer of the income verification letter and the payer of the checks Plaintiff supplied, and a discrepancy between the address on Plaintiff's application and the address on his credit report.   Compl. Ex. 211, ECF No. 1-2 at 19. In an email dated September 24, 2024, Plaintiff offered his rebuttal to each reason and asked Stilli to "follow DC law and provide me a lease for the apartment as per the conditional offer confirmed in your text messages." *Id*. at 18-19.   Following "another extensive e-mail" from Plaintiff, Stilli "received managerial support" from Managing Broker Gaddis who informed Plaintiff by email dated September 30, 2024, that the decision "to accept a tenant is up to the property owner" and "as the real estate brokerage" Sotheby's neither owns nor manages the condo but rather assists "in the marketing of the home and bringing applications to the owner." Defs.' Mem. at 4 (citing Compl. Ex. 311).

Plaintiff surmises that Villa "refused to provide a lease because she had read on the internet that Plaintiff had been accused of fraudulently billing a health insurer and failing to pay taxes to the IRS" and that Sotheby's "knew that" was the reason Villa had allegedly refused to honor the lease agreement.[2]   Compl. ¶¶ 59, 60.   Plaintiff posits that Defendants "knew" they

---

[2]    Indeed, Plaintiff was indicted in the U.S. District Court for the District of Massachusetts for health care fraud, money laundering, conspiracy to defraud the Internal Revenue Service, and tax evasion, *Merchia v. United Healthcare Services, Inc*., 2025 WL 3760613, at *1 (D.D.C. Dec. 22, 2025) (citations omitted).   In January 2026, a jury convicted him on "all counts" that went to trial, *USA v. Merchia*, No. 1:22-CR-10355, Dkt. 675 (D. Mass. Jan. 27, 2026), and he is scheduled to be sentenced on April 28, 2026, *id*., Dkt. 679.

were required by D.C. law to inform him "of the reason they were not honoring the Agreement to Lease" and to provide him "an opportunity to respond regarding the Accusations."  *Id*. ¶¶ 61-62.  He contends that had Defendants obeyed the law, they "would have found Plaintiff did not pose a risk to the Property or neighboring inhabitants."  *Id*. ¶ 66.

Plaintiff claims: Count 1 – Breach of Contract Against All Defendants; Count 2 – Breach of Covenant of Good Faith and Fair Dealing Against All Defendants; Count 3 – Conspiracy Against All Defendants; Count 4 – Violation of the D.C. Human Rights Act Against All Defendants; and Count 5 – Unfair and Deceptive Trade Practices Against All Defendants in Violation of D.C. Code § 28-3904.  Compl. at 21-26.  He seeks specific performance and monetary damages exceeding $75,000.  *See id*. ¶¶ 37, 128.

**B. Procedural Posture**

On November 1, 2024, Plaintiff initiated this action by filing a complaint and separate motion for leave to proceed *in forma pauperis* (IFP), which was granted on November 26, 2024. Pursuant to 28 U.S.C. § 1915(d) governing IFP proceedings, the U.S. Marshals Service served Sotheby's and Gaddis with process on April 21, 2025 (ECF No. 8).  Attempts to serve Villa, Kendrick, and Stilli were unsuccessful.[3]  *See* ECF Nos. 6, 7 ("unexecuted" returns of service).

On May 5, 2025, the Sotheby's defendants moved collectively to dismiss the complaint against them.  *See* Defs.' Mot. at 1, n.1 (noting Stilli's and Kendrick's waivers of service and joinder in the motion to dismiss).  On May 6, 2025, the Court issued an order advising Plaintiff

---

[3]    The Deputy Marshal certifies that Laura Villa, who has not appeared in the case, does not live at the address Plaintiff provided.  ECF No. 6.  Plaintiff's attempts to locate another address for Villa have been unsuccessful.  *See generally* ECF No. 12.  Pursuant to Fed. R. Civ. P. 4(m), the Court will dismiss this action against Villa without prejudice, subject to reopening should Plaintiff secure Villa's address or her waiver of service and move within a reasonable time to reopen the case.

of his obligation to respond to Defendants' motion by May 30, 2025, or risk dismissal of the case.   ECF No. 11 (*Fox* Order).   Meanwhile on May 21, 2025, Plaintiff filed a motion to compel Stilli to disclose "service information" for Villa and, on May 30, 2025, he moved to extend his deadline for responding to the motion to dismiss by two days after resolution of the motion to compel.   On February 9, 2026, the Court denied Plaintiff's motion to compel and ordered him to respond to Sotheby's motion to dismiss by March 12, 2026, or suffer dismissal of the case.   *See* Min. Order.   On the due date, Plaintiff moved for a one-day extension to file his opposition to the motion to dismiss.   ECF No. 18.   The next day, on March 13, 2026, Plaintiff filed another motion requesting "1 additional day" to file the opposition.   ECF No. 19. Incredibly, Plaintiff asserts in each motion that he is "overwhelmed" by his "malicious criminal prosecution" in the District of Massachusetts despite its conclusion on January 27, 2026. Consistent with the advisements in the *Fox* Order, the Court will address the Sotheby's defendants' motion without further delay.[4]

### III.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" to give the defendant fair notice of the claim and the grounds upon which it rests.   Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint."   *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).   The motion does not test a plaintiff's ultimate

---

[4]   *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (recognizing the courts' inherent authority to "manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases[.]").

likelihood of success on the merits, but only forces the court to determine whether a plaintiff has properly stated a claim. *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991).

It is not necessary for the plaintiff to plead all elements of a prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted). And "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.' " *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555. When performing the "context-specific task" of deciding whether a plausible claim has been stated, a court must "draw on its judicial experience and common sense[.]" *Iqbal*, 556 U.S. at 679.

## IV.  DISCUSSION

Sotheby's argues first that counts one and two of the complaint asserting breach of

contract and breach of covenant of good faith and fair dealing should be dismissed in the absence of a valid contract.   "All contracts in the District of Columbia 'contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)); *see accord Rothberg v. Xerox Corporation*, 709 F. App'x. 1, 3 (D.C. Cir. 2017) (The covenant of good faith and fair dealing does not apply absent a contractual obligation.).   But it is unrefuted that "there was never a contract between the Plaintiff and the Sotheby's Defendants," and Sotheby's does not have an ownership interest in the condo.   Defs.' Mem. at 7-8; *see* Compl. ¶ 56 (alleging "[w]ith the conditions of credit and criminal background checks in the Conditional Offer to Lease having been met, *Defendant-Owner and Plaintiff* had a binding agreement to lease the Property") (emphasis added)).   Accordingly, the counts of the complaint predicated on the formation of a contract are dismissed with prejudice.

Plaintiff's statutory claims fare no better.   In count four, Plaintiff alleges by incorporation that Sotheby's violated the provision of the D.C. Human Rights Act proscribing "discrimination by reason of [one's] source of income."   D.C. Code § 2-1401.01; *cf.* Compl. ¶¶ 118-119 *with* ¶¶ 81-82 and Ex. 201.   The Human Rights Act is intended to "end . . . discrimination for any reason other than that of individual merit[.]"   D.C. Code § 2-1401.01. The complaint's allegations and exhibits support Sotheby's asserted need for additional information "to verify" that Plaintiff's income "actually existed," not to question its source.[5]

---

[5]   In demonstrating the reasonableness of the concerns about Plaintiff's income, Sotheby's notes that during the same time frame Plaintiff claimed to have "sufficient funds" to pay the monthly rent of $3,200, he had "applied for and was granted in forma pauperis in this matter."   Def.'s Mem. at 13.   In the IFP motion dated October 31, 2024, Plaintiff states under penalty of perjury that he is "self-employed" but earns

Def.'s Mem. at 12-13.   In count five, Plaintiff invokes the D.C. Consumer Protection Procedures Act ("CPPA"), which prohibits "any person" from "engaging in an unfair or deceptive trade practice whether or not any consumer is in fact misled, deceived, or damaged thereby."   D.C. Code § 28-3904.   The CPPA is violated when a "merchant [has] made a material misrepresentation under § 28-3904(e), or failed to make a material disclosure under § 28-3904(f)."   *Frankeny v. District Hospital Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) (citing *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013)).   Plaintiff has not plausibly alleged that Sotheby's misrepresented or omitted anything, much less something material.   His conclusory string of adjectives comprising count five, Compl. ¶¶ 122-125, does not suffice to nudge the CPPA claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and the Court foresees "no allegation of other facts" that could "possibly cure" this defect, " *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).   Accordingly, counts four and five are dismissed with prejudice.

Finally, Sotheby's argues that count three asserting a civil conspiracy should be dismissed in the absence of a showing of tortious conduct.   *See* Def.'s Mem. at 10-11.   The Court agrees.   Under D.C. law, a party bringing a civil conspiracy claim must allege "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the

---

no monthly income.   In response to the question about other income in the past 12 months, Plaintiff states that he does not receive "income, but from time to time I get payments towards a promissory note for a company I had sold in 2008"; he does not complete the answer by stating the amount he received and the amount he "expect[s] to receive in the future."   Mot., ECF No. 2 at 1.   The Court takes judicial notice of several cases filed here where Plaintiff has obtained IFP status on less than candid answers.   Any future such motions should undergo closer scrutiny.   *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if [it] determines that (A) the allegation of poverty is untrue").

parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halbersham v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).   The conspiracy is not actionable per se but rather " 'depends on performance of some underlying tortious act'[.]" *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 672 (D.C. Cir. 2023) (quoting *Halbersham*, 705 F.2d at 479)).   Because the conduct giving rise to this action is not unlawful, much less tortious, the conspiracy count is dismissed as well.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to state a claim for relief and, therefore, dismisses the complaint and this case.   A separate order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
United States District Judge

Date: March 23, 2026